## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| IN RE:<br><br>JOSEPH WILLIAM PESKEY<br>D/B/A PESKEY TECHNOLOGY;<br>F/D/B/A BLACK CAT GARDENS<br>SSN/ITIN xxx-xx-5948<br><br>KATHERINE ANN PESKEY<br>F/K/A KATHERINE ANN WHALEN;<br>A/K/A KATIE PESKEY<br>SSN/ITIN xxx-xx-0846<br><br><br><br>DEBTORS | BANKR. NO. 23-40245<br>CHAPTER 7<br><br><br><br><br><br>ADV. NO. |
| MARY R. JENSEN,<br>ACTING UNITED STATES TRUSTEE, REGION 12,<br><br>PLAINTIFF,<br><br>JOSEPH WILLIAM PESKEY,<br><br>AND<br><br>KATHERINE ANN PESKEY<br><br>AND<br><br>ERIC JOHN RONKE<br><br>DEFENDANTS | |

## UNITED STATES TRUSTEE'S COMPLAINT AGAINST DEBTORS JOSEPH AND KATHERINE PESKEY AND ATTORNEY ERIC RONKE

The Acting United States Trustee ("UST"), through the undersigned Trial Attorney, files

the following Complaint pursuant to 11 U.S.C. §§ 329(b), 526-528, and Federal Rules of

1

Bankruptcy Procedure 2016 and 2017 requesting the Court enter a judgment and order: (1) voiding any contract for bankruptcy services between Eric John Ronke and Joseph William Peskey and Katherine Ann Peskey; (2) imposing sanctions in the form of disgorgement of fees paid to Mr. Ronke related to the Debtors' bankruptcy filing; (3) requiring Mr. Ronke to fully disclose each and every open case which CaseDriver has been involved; (4) enjoining Mr. Ronke from any association with CaseDriver or Ms. Gorman until this Court has made a determination about the appropriateness of the relationship under the Bankruptcy Code and Rules; and (5) further relief the Court deems just related to what the UST perceives to be an issue of mass non-disclosure.

## I. PARTIES, JURISDICTION, AND VENUE

1.  Joseph William Peskey and Katherine Ann Peskey are bankruptcy debtors in the above captioned case.

2.  Eric John Ronke is a South Dakota licensed attorney admitted to practice before the District of South Dakota Bankruptcy Court. Mr. Ronke is the attorney of record in the Debtors' bankruptcy case and has worked in such capacity at all times relevant to this action.

3.  Mr. Ronke, through his firm Ronke Law, PLLC, is an entity that Mr. Ronke holds an interest in, and through which he provides legal services including the bankruptcy services provided to the Debtors in this case.

4.  Mary R. Jensen is the Acting United States Trustee for Region 12. 28 U.S.C. § 581(a)(3).

5.  The UST has standing to file this Motion under 28 U.S.C. § 586(a), 11 U.S.C. §§ 307, and 526-528, as well as Fed. R. Bankr. P. 2016 and 2017.

6.  This Court has jurisdiction over the subject matter of this proceeding pursuant to

28 U.S.C. §§ 1334(b), 157(a) and (b)(1).

7.  The UST consents, pursuant to Fed. R. Bankr. P. 7008, to entry of a final order or judgment by the Court in the above captioned case.

8.  Venue is proper in the United States Bankruptcy Court for the District of South Dakota pursuant to 28 U.S.C. § 1409(a) because the Debtors' bankruptcy case was filed in this district.

## II.  ALLEGATIONS

### A.  The Debtors' Bankruptcy Filing

9.  The Debtors' bankruptcy case was commenced on August 9, 2023, by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. No schedules or statements were filed and a deadline of August 23, 2023, was set by the Court for all deficient items to be filed on the docket.

10. Mr. Ronke signed the Debtors' bankruptcy documents, declaring that he had explained bankruptcy eligibility and the relief available to the Debtors, and certifying to having no knowledge after inquiry that the information contained in the bankruptcy documents is incorrect. Docket No. 1, p. 7.

11. Also on August 9, 2023, the Debtors filed an Application to Pay Filing Fee in Installments at Docket No. 4. This Application was granted at Docket No. 7 and permitted the Debtors to make two payments of $169.00 to the Court on September 6, 2023, and October 4, 2023.

12. On August 22, 2023, Mr. Ronke, on behalf of the Debtors, filed Debtors' Schedules, Declaration, and Statement of Financial Affairs ("SOFA") for Individuals Filing for Bankruptcy at Docket No. 12 (collectively the "bankruptcy documents").

3

13. Mr. Ronke filed a Rule 2016(b) Disclosure of Compensation on August 22, 2023. Docket No. 13. The Disclosure provides in paragraph 1 that Mr. Ronke received a total of $935.00 in exchange for services rendered in connection with this case, and that he was still owed $1,207.09.[1]

14. In paragraph 2 of the Disclosure of Compensation the following statement is made which conflicts with the amounts provided in paragraph 1:

> I have made a flat fee agreement with Debtor. The total fees I will be paid in this case will not exceed **$0.00**, which comprises **$0.00** for compensation for services, **$0.00** for sales tax, and **$0.00** for reimbursement for expenses, including the filing fee.

15. Paragraph 5 of the Disclosure of Compensation states as follows:

> 5. <u>Fee Sharing</u>. I have not shared or agreed to share my fees with anyone who is not a member or an associate of my law firm.

16. The Debtors appeared and testified at their Section 341 meeting of creditors ("341 meeting") along with counsel, Mr. Ronke, on September 5, 2023.

17. On October 24, 2023, when the Debtors failed to pay the chapter 7 filing fee, the Court entered an Order to Show Cause at Docket No. 35. This Order directed the Debtors to provide a written response to the Order by October 31, 2023, to show cause why sanctions including dismissal of the case should not be imposed on the Debtors.

18. Mr. Ronke, on behalf of the Debtors, filed no written statement by the date set by the Court.

19. On November 2, 2023, the United States Trustee (UST) filed a Motion for 2004 Examination of the Debtors related to concerns about Mr. Ronke's representation of the Debtors

---

[1] The $2,142.09 consists of: $1,875.37 compensation for legal services; $150 cost including filing fee; and $116.72 sales tax on compensation.

4

and their failure to timely pay filing fees. Docket. No. 37. The Court granted the Motion on the same day. Docket No. 38.

20. On November 3, 2023, the Debtors paid the chapter 7 filing fee in full.

**B. Rule 2004 Examination**

21.  The undersigned conducted a "Rule 2004" exam of Debtor Joseph Peskey ("Debtor") on November 29, 2023.

22. The Debtor testified he had first contacted Mr. Ronke for the purpose of filing bankruptcy in 2021. Due to a series of life events Debtor delayed filing until June 2023, when Debtor determined it was time to proceed and let Mr. Ronke's office know the same.

23. When asked about the circumstances surrounding the failure to timely pay the filing fee the Debtor testified that his inability to pay his filing fee by the deadline set by the Court had to do with the death of a close family member, which information he had relayed to Mr. Ronke.

24. Despite no response having been filed to the Court's Order to Show Cause, the Debtor testified that someone from Mr. Ronke's office communicated with him to obtain his consent to file a written response to the Court's Order to Show Cause.

25. Additionally, the Debtor testified that many of the communications he had with Mr. Ronke's office were with a contracted paralegal named Evelyn (hereinafter "Ms. Gorman"). He testified to his knowledge that she "is not necessarily employed by" Mr. Ronke and that he knows she does not physically work in Mr. Ronke's office.

26. The Debtor testified that he orally consented to Mr. Ronke providing Ms. Gorman his personal information as a means to "get the ball rolling again for bankruptcy," but that no formal signed consent exists to evidence any agreement.

27. The Debtor testified that while he was aware the Mr. Ronke's office used a contract paralegal service, he was not aware that any of the funds he paid Mr. Ronke's office would be shared with any third parties.

28. The Debtor testified that on June 21, 2023, he spoke with Ms. Gorman telephonically for a consultation as to "where we are at currently" and he provided pay stubs and updated documentation to her.

**C. CaseDriver Inquiry**

29. On December 18, 2023, the UST sent Mr. Ronke an inquiry related to the contract paralegal service he was utilizing.

30. In response to the UST's inquiry Mr. Ronke disclosed his firm's relationship with an entity known as "CaseDriver."

31. Upon information and belief, CaseDriver is a contract paralegal service.

32. When the UST requested Mr. Ronke provide his written agreement with CaseDriver Mr. Ronke responded on January 21, 2024, stating the following:

> Question 2 – In discussing this with the Owner of Case Driver, we discovered that we never formally entered into any agreements or contracts. We have done it on a word of mouth agreement. Upon discovering that, the owner is working to put together a formal contract for our agreement.

33. No subsequent written agreement or contract with CaseDriver has been provided by Mr. Ronke to the UST.

34. Mr. Ronke has represented that CaseDriver assigned Mr. Ronke and his firm a primary paralegal, Ms. Gorman. Further, Mr. Ronke has stated that Ms. Gorman works with his clients to gather and prepare Chapter 7 and Chapter 13 cases, whereafter Mr. Ronke completes the signing appointment.

6

35. Mr. Ronke provided the UST his retainer agreement with the Debtors. The agreement contains no provisions of informed consent related to Mr. Ronke sharing the Debtors' personal information with CaseDriver or Ms. Gorman.

36. Mr. Ronke represented to the UST that Ronke Law Firm pays CaseDriver $400 per case to prepare the chapter 7 and chapter 13 cases of its clients. Mr. Ronke does not directly pay Ms. Gorman, who he asserts is a subcontractor of CaseDriver.

37. Mr. Ronke's fee disclosures are void of any mention of Ms. Gorman or CaseDriver or any fee sharing arrangement that exists between these parties.

38. Mr. Ronke's retainer agreement with the Debtors contains no reference to any fee sharing arrangement between Mr. Ronke, Ms. Gorman or CaseDriver.

39. Mr. Ronke represented to the UST that neither he nor his firm have an employment agreement with Ms. Gorman.

40. Mr. Ronke represented to the UST that Ms. Gorman is neither a member nor associate of Ronke Law Firm.

41. The UST is informed, believes, and thereon alleges that Mr. Ronke's firm does not issue any tax forms to CaseDriver or Ms. Gorman for the payment of income or services.

**D. Ms. Gorman's Involvement and Providing of Legal Advice**

42. Upon consent of the Debtor, Mr. Ronke provided to the UST communications between Ms. Gorman and the Debtors.

43. The Debtor testified that Ms. Gorman uses the email address evelyn@casedriver.com to communicate with Mr. Ronke's clients.

44. In the produced communications, Ms. Gorman provides legal advice to the Debtors.

7

| EMAIL Client | 8/2/2023 | Gorman, Evelyn | Good afternoon, I have almost completed the preparation of your petition but we have run into a problem with enough exemptions to protect all of the farm animals. We honestly have no idea how to properly value them. Please let me know if the values you provided are based on their purchase price or what you might be able to get for them if you were to sell them off quickly. Also, if we do not have enough exemptions to cover the farm animals, in order to keep them, you would need to pay money in to the trustee equal to their value, which she will determine. Alternatively, I can use the exemptions to protect the animals and you would likely need to pay the value of some of your personal property to the trustee. Payments to the trustee are typically made over a period of several months. You may be able to negotiate to make a smaller payment monthly and then pay the balance when you receive your tax refund next year. About half of the refund will need to be paid to the trustee in any case. Please let me know about the values and how you would like me to handle the farm animals. Thank you, Evelyn |
|---|---|---|---|

45. Upon information and belief, Ms. Gorman does not live in the state of South Dakota. Upon information and belief, she is not licensed to practice law in the state of South Dakota.

46. Due to Ms. Gorman's purported position as a subcontractor of CaseDriver and Mr. Ronke's lack of formal agreement with CaseDriver it is unclear whether Ms. Gorman is drafting petitions as a paralegal or a document preparer.

47. In response to the UST's inquiry to Mr. Ronke to turn over communications between Ms. Gorman and other Debtors, he stated as follows:

> Question 12 – I am not willing to provide this information. This would be an unfairly burdensome task that would take days to compile. Also, most of that information would be protected by attorney/client privilege.

48. The UST has doubts about any assertions that Ms. Gorman's communications would be protected by attorney client privilege when Ms. Gorman is not an employee of Mr. Ronke's firm, and the Debtors have not specifically engaged CaseDriver or its subcontractors for the purpose of obtaining legal advice.

### III.  CAUSES OF ACTION

### COUNT 1: VIOLATION OF 11 U.S.C. § 329(b) AND FED. R. BANKR. PRO. 2017

49. The UST hereby realleges and incorporates by this reference all preceding paragraphs.

50. A court may examine the reasonableness of compensation paid to an attorney.

11 U.S.C. § 329(b). If the compensation exceeds the reasonable value of the services, the court may cancel the agreement and/or order the return of the payment to the extent excessive. *Id.*

51. Rule 2017(a) provides: "[o]n motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code . . . to an attorney for services rendered or to be rendered is excessive." *See* Fed. R. Bankr. P. 2017(a).

52. Under 11 U.S.C. § 329 and Rule 2017(a), the court has the power to determine whether a fee is excessive, and the remedy for excessiveness is return of the payment to the extent it exceeds the reasonable value of services rendered. *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 758 (8th Cir. 1997). Compensation may also be disgorged under § 329(b) if an attorney fails to perform the specific services promised to be performed in exchange for certain compensation, *In re Johnson,* 291 B.R. 462, 467 (Bankr. D. Minn. 2003) or performs agreed services that are incomplete or erroneous. *Hale v. U.S. Trustee*, 509 F.3d 1139, 1147 (9th Cir. 2007).

53. Section 329(b) places the burden on the debtor's attorney to establish the reasonableness of their compensation. *In re Mahendra*, 131 F.3d 750, 757 (8th Cir. 1997); *Ridings v. Casamatta (In re Allen)*, 628 B.R. 641, 644 (B.A.P. 8th Cir. 2021).

54. The scope of § 329 is very broad. *In re McDonald Brothers Construction, Inc.,* 114 B.R. 989, 995 (Bankr. N.D. Ill. 1990). "The reasonable value of services rendered by a debtor's attorney is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." *In re Lee*, 495 B.R. 107, 113-14 (Bankr. D. Mass. 2013) (quoting *In re Spickelmier,*

9

469 B.R. 903, 914 (Bankr. D. Nev. 2012); see also *In re Zepecki*, 258 B.R. 719, 725 (B.A.P. 8th Cir. 2001).

55. Congress enacted § 329 based, in part, over concern that payments by a debtor to his or her attorney present a "serious potential for overreaching by the debtor's attorney." H.R. Rep. No. 95–595, at 329 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6285. Payments a debtor makes to his or her attorney should therefore be subjected to "careful scrutiny." *Id.*

56. The UST asserts Mr. Ronke was negligent in his representation of the Debtors. Debtor testified that he disclosed to Mr. Ronke circumstances which justified cause to request the Court extend the time to pay the filing fee in installments pursuant to Fed. R. Bankr. Pro. 1006(b)(2). No such request to the Court was made.

57. Further Mr. Ronke, despite seeking the Debtors' consent to file a response to the Order to Show Cause, failed to abide by a Court established deadline and put the Debtors' case and discharge in jeopardy.

58. Accordingly, the UST submits the amount of compensation paid by the Debtors to Mr. Ronke is unreasonable and excessive.

59. Mr. Ronke charged a total service fee in the amount of $2,142.09. This amount is above the average chapter 7 bankruptcy rate in South Dakota.

60. The Debtors' bankruptcy filing is largely nondescript. They are well under median, consisting of a claimed household of six on Form 122A-1.

61. The UST asserts that Mr. Ronke's failure to abide by a Court ordered deadline unnecessarily risked the Debtors' their discharge and ability to successfully reorganize.

WHEREFORE, the UST requests the Court void any bankruptcy service agreement

between Mr. Ronke and the Debtors and order the disgorgement of fees.

## <u>COUNT 2: VIOLATION OF 11 U.S.C. § 329(a)</u>

62. The UST hereby realleges and incorporates by this reference all preceding paragraphs.

63. The disclosure requirements imposed by section 329 are "mandatory, not permissive." *In re Sandpoint Cattle Co., LLC*, 556 B.R. 408, 421 (Bankr. D. Neb. 2016) (citation omitted). "Debtor's counsel [must] lay bare all its dealings . . . regarding compensation. . . . Counsel's fee revelations must be direct and comprehensive. Coy, or incomplete disclosures . . . are not sufficient." *Id.* quoting *In re Rio Valley Motors Co., LLC*, 2007 Bankr. LEXIS 3001, 2007 WL 2492685, at *2 (Bankr. D.N.M. Aug. 29, 2007) (quoting *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.),* 210 B.R. 844, 848 (10th Cir. BAP 1997)); *In re Petersen,* Nos. 17-01612-als7, 17-01831-als7, 17-01869-als7, 17-02064-als7, 2018 Bankr. LEXIS 2531, at *6 (Bankr. S.D. Iowa Aug. 23, 2018).

64. Mr. Ronke's fee disclosure (Docket No. 13) contains conflicting amounts for the bankruptcy services he provided. Specifically, paragraph one details that Mr. Ronke charged $2,142.09 for his services and paragraph two details that his fees will not exceed $0.00.

65. "The duty is placed entirely on the debtor's attorney to provide an 'absolute and complete disclosure of all payments received, and that attorney assumes all of the risks arising from any miscalculation or omission.' Therefore, 'it is imperative that every doubt in the mind of a debtor's attorney regarding the scope of § 329(a) must be construed in favor of disclosure and such an attorney must thereafter be diligent in supplementing any previous disclosure regarding compensation payments so that the statutory right of creditors and the statutory duty of the Court to conduct a fee examination might be effectively protected.'" *In re Kolle,* 641 B.R. 621, 657

11

(Bankr. W.D. Mo. 2021) (internal citations omitted).

66. Despite having knowledge of the deficiency in the filed disclosure, no amended or supplemental disclosure has been made by Mr. Ronke.

67. Disclosure of compensation required under 11 U.S.C. §329 is accomplished as follows:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. *The statement shall include the particulars of any such sharing or agreement to share by the attorney*, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. Rule of Bank. Pro. 2016(b) (2018) (emphasis added); *In re Kolle*, 641 B.R. 621, 653 (Bankr. W.D. Mo. 2021).

68. Paragraph 5 of Mr. Ronke's fee disclosure states: "I have not shared or agreed to share my fees with anyone who is not a member or associate of my law firm." That statement is false.

69. The fee disclosure makes no reference to Ms. Gorman or CaseDriver receiving any portion of the fees paid to Mr. Ronke by the Debtors.

70. "Disgorgement of fees that have been paid is a serious sanction. When it is used, it generally is done so as a sanction for egregious conduct." *In re Midland Props. II, LLC*, No. BK16-80487, 2016 Bankr. LEXIS 2438, at *25 (Bankr. D. Neb. June 29, 2016) citing *In re Miller Auto. Group, Inc.*, 521 B.R. 323, 333 (Bankr. W.D. Mo. 2014). No showing of harm is required for this remedy to be imposed. *In re Johnson*, No. 05-30023, 2006 Bankr. LEXIS 3057,

2006 WL 3242692 at *11 (Bankr. D.S.D. Nov. 7, 2006), citing *Briggs v. LaBarge (In re McGregory)*, 340 B.R. 915, 922-23 (B.A.P 8th Cir. 2006).

71. Further, disgorgement is not limited to circumstances of willful misconduct by an attorney:

> While a more 'technical breach' of the attorney's obligations under the Bankruptcy Code and the Bankruptcy Rules may not warrant denial of all compensation, it is clear that a finding of willfulness is not required; '[d]isgorgement may be proper even though the failure to [comply with the Code and Rules] resulted ... from negligence or inadvertence.'

*In re Chatkhan*, 496 B.R.687, 695 (Bankr. E.D.N.Y. 2012) (quoting *Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Constr. Co., LLC)*, 79 Fed. Appx. 770, 779 (6th Cir. 2003). The case law is clear that disgorgement of fees is appropriate upon any failure to accurately disclose compensation and the sharing of compensation. See *Schroeder v. Rouse (In re Redding)*, 263 B.R. 874, 880 (B.A.P. 8th Cir. 2001).

72. In the instant matter, Mr. Ronke accepted $2,142.09 in legal fees. The Debtors have testified that they worked directly with Ms. Gorman in their schedule preparation.

73. Based upon on his representations to the UST, Mr. Ronke paid $400 to CaseDriver for Ms. Gorman's involvement in this matter.

74. For the reasons stated herein, the UST contends that Mr. Ronke falsely certified on his disclosure statement that he did not engage in fee sharing with a third-party entity, CaseDriver, Ms. Gorman, or with anyone other than members and associated of his firm. It is therefore appropriate for the Court to order Mr. Ronke disgorge any fees paid to CaseDriver and/or Ms. Gorman for work completed on behalf of these Debtors.

WHEREFORE, the UST requests the Court void any bankruptcy service agreement

between Mr. Ronke and the Debtors and order the disgorgement of fees.

## COUNT 3: VIOLATION OF 11 U.S.C. § 526(a)(2)

75. The UST hereby realleges and incorporates by this reference all preceding paragraphs.

76. Congress enacted Section 526 to "strengthen professionalism standards for attorneys and others who assist consumer debtors with their bankruptcy cases." *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 263 n. 3, 130 S.Ct. 1324, 176 L.Ed.2d 79 (2010); H.R.Rep. No. 109–31, 109th Cong. 1st Sess. at 4 (April 8, 2005); 4 Collier on Bankruptcy ¶ 526.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

77. Section 526 states that a "debt relief agency" shall not:

> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

11 U.S.C. § 526(a).

78. A "debt relief agency" is defined, in Section 101(12A) as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration." 11 U.S.C. § 101(12A); see also *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. at 239 (bankruptcy attorneys fall within the definition of a "debt relief agency").

79. Section 101(4A) broadly defines "bankruptcy assistance" to mean "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditor's meeting or appearing in a case or proceeding on behalf of another or providing legal

14

representation with respect to a case or proceeding under this title."

80. An "assisted person," in turn, is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $226,850." 11 U.S.C. § 101(3).

81. As a remedy for violating these requirements, Section 526 provides that if an attorney is found to have "intentionally violated" any of the restrictions or requirements in Section 526, or to have "engaged in a clear and consistent pattern or practice" of violating Section 526, the Court may enter an injunction against the attorney and/or impose an appropriate civil penalty against the offending person. 11 U.S.C. § 526(c)(5).  The remedies should be designed to deter offending parties and others from similar conduct in the future. *In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (citing *In re Huffman*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014)). Courts have imposed penalties in varying amounts, based on the facts in each case, sufficient to deter offending conduct. *See, e.g., In re Wicker*, 702 F.3d 874, 878 (6th Cir. 2012) (affirming $5,000 civil penalty bankruptcy court imposed on debt relief agency under Section 526(c)(5)); *In re Hanawahine*, 577 B.R. at 580 (imposing a $4,311 penalty equivalent to treble damages); *In re Huffman*, 505 B.R. at 766 (imposing a $28,000 penalty as four times the fees charged to the debtor). Further, where appropriate, courts have imposed an injunctive remedy such as prohibiting the attorney from practicing before the bankruptcy court. *See In re Parker*, 485 F. App'x 989, 991-992 (11th Cir. 2012) (affirming suspension of attorney under section 526(c)(5)(B) and Bankruptcy Rule 9011).

82. For purposes of Section 526(c)(5), an intentional violation may be established through circumstantial evidence. *L. Sols. of Chicago LLC v. Corbett*, No. 1:18-CV-00677-AKK,

15

2019 WL 1125568, at *7 (N.D. Ala. Mar. 12, 2019), *aff'd*, 971 F.3d 1299 (11th Cir. 2020)

("Because direct evidence of intent is rarely available, a court may infer intent from the totality

of the circumstances, and reckless indifference may be sufficient to establish intent in some

cases.") (quotation omitted). For instance, an attorney's failure to take legal obligations seriously

or to make an effort to comply with the law constitutes intentional conduct. *See Id.* Reckless

disregard for the truth of the matter asserted is sufficient to establish that a false or misleading

statement was made intentionally. *See Id*.

83. "The requirement of intent does not apply to the second – 'clear and

consistent pattern or practice' – category based on the text of the statute." *Hobbs v. Chesson*, No.

MC 16-00201, 2018 WL 4172667, at *12 (Bankr. W.D. La. Aug. 29, 2018). Instead, a court may

find a clear and consistent pattern or practice exists through evidence that the violation was part

of "a standard or routine way of operating." *Corbett* 2019 WL 1125568 at *8 (quoting *In re*

*Maxwell*, 281 B.R. 101, 103 (Bankr. D. Mass. 2002)); *In re Cook*, 610 B.R. 852, 867 (Bankr.

N.D. Ill. 2019) ("A civil penalty for repeated violations of its statutory obligations and the choice

to bury its head in the sand and ignore an obvious issue is therefore appropriate."); *see also First*

*Nat'l Bank v. Off. of Comptroller of Currency*, 956 F.2d 1456, 1461–62 (8th Cir. 1992)

(construing the identical "clear and consistent pattern or practice" provision in the Truth in

Lending Act).

84. Mr. Ronke and his firm acted as a debt relief agency in relation to the Debtors.

85. The Debtors are "assisted persons" and received "bankruptcy assistance from Mr.

Ronke and his firm.

86. Mr. Ronke's Disclosure of Compensation as filed in the Debtors' bankruptcy case

16

was deficient and failed to disclose his relationship with CaseDriver and Ms. Gorman, as well as their fee sharing arrangement. Mr. Ronke therefore made a statement in a document filed in the case that was untrue or misleading or that upon the exercise of reasonable care, should have been known by Mr. Ronke to be untrue or misleading, in violation of 11 U.S.C. § 526(a)(2).

87. Mr. Ronke represented to the UST that he pays CaseDriver $400 *per case* for bankruptcy related services. Neither CaseDriver nor Ms. Gorman are members or associates of Mr. Ronke's firm. A disclosure of this arrangement should therefore be present on every fee disclosure where CaseDriver or Ms. Gorman completes work.

88. Mr. Ronke has not produced any written agreement to substantiate the relationship between himself, CaseDriver and Ms. Gorman.

89. The UST's attorney sat down with Mr. Ronke and explained her concerns related to the fee sharing relationship with CaseDriver in January 2024. To date no amendments or supplemental disclosures have been filed.

90. Mr. Ronke's conduct, as described in relation to this cause of action, was intentional for purposes of assessing the appropriate remedy under Section 526(c)(5).

91. Mr. Ronke's conduct as described in relation to this cause of action showed a clear and consistent pattern or practice for purposes of assessing the appropriate remedy under Section 525(c)(5).

WHEREFORE, the UST requests the Court enter judgment against Mr. Ronke (a) imposing an appropriate sanction or civil penalty, (b) entering such injunctive relief as appropriate to prevent future violations of Section 526, up to and including enjoining Mr. Ronke from associating with CaseDriver or Ms. Gorman until a determination has been made by this

Court as to the appropriateness of the relationship under the Bankruptcy Code and Rules and (c) for such other relief as the Court deems proper.

## COUNT 4: VIOLATION OF 11 U.S.C. § 526(a)(1)

92. The UST hereby alleges and incorporates by this reference all preceding paragraphs.

93. 11 U.S.C. § 526(a)(1) prohibits counsel from failing to perform any service in connection with a case or proceeding.

94. Mr. Ronke was negligent when he failed to abide by a Court scheduled deadline to responds to the Court's Order to Show Cause.

95. Mr. Ronke's failure to perform this service unnecessarily risked the Debtors' case and discharge.

WHEREFORE, the UST requests the Court enter judgment against Mr. Ronke (a) imposing an appropriate sanction or civil penalty, (b) entering such injunctive relief as appropriate to prevent future violations of Section 526, up to and including enjoining Mr. Ronke from associating with CaseDriver or Ms. Gorman until a determination has been made by this Court as to the appropriateness of the relationship under the Bankruptcy Code and Rules and (c) for such other relief as the Court deems proper.

## COUNT 5: VIOLATION OF 11 U.S.C. § 528

96. The UST hereby realleges and incorporates by this reference all preceding paragraphs.

97. Section 528 requires any debt relief agency providing bankruptcy services to an assisted person to "execute a written contract with such assisted person that explains clearly and

conspicuously (A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment." 11 U.S.C. § 528(a)(1).

98. The debt relief agency must execute that written agreement within five (5) business days of providing any "bankruptcy assistance" to the assisted person. 11 U.S.C. § 528(a)(1).

99. In addition, the debt relief agency is required to provide a copy of the "fully executed and completed contract" to the debtor. 11 U.S.C. § 528(a)(2).

100.    Section 526(c)(1) provides that a contract for bankruptcy services that fails to comply with any of the material requirements of Sections 526, 527, or 528, "shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person." 11 U.S.C. § 526(c)(1).

101.  The fee agreement between Mr. Ronke and the Debtors fails to list material terms related to the involvement of CaseDriver and Ms. Gorman, written consent for Debtors' personal information to be shared outside of Mr. Ronke's firm, and the fee sharing arrangement amongst the parties.

WHEREFORE, the UST requests the Court enter judgment against Mr. Ronke (a) cancelling and voiding the contractual agreement between Debtors and Mr. Ronke; and (b) such other relief as deemed proper.

## COUNT 6: UNAUTHORIZED PRACTICE OF LAW

102.  The UST hereby realleges and incorporates by this reference all preceding paragraphs.

103.  "Overseeing lawyers who represent bankruptcy debtors" is one of the "core and traditional role[s]" of the Bankruptcy Court. *In re Stewart*, 970 F.3d at 1258 (citing 3 Richard

Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶329, at 329–34 (16th ed. 2020)). "The Court has the duty and authority to regulate the litigants that appear before it and address their improper conduct." *In re Burnett*, 2022 WL 802586, at \*12 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42–43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991)).

104.  "The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous." *In re Young*, 789 F.3d 872, 879 (8th Cir. 2015). "Courts must uphold the dignity of the legal profession, and need to protect the public from any attorney misconduct." *In re Dobbs*, 535 B.R. 675, 698 (Bankr. N.D. Miss. 2015).

105.  Bankruptcy courts have an inherent authority to regulate the practice of attorneys who appear before them and impose sanctions on those attorneys for abuses of the bankruptcy process. *See In re Courtesy Inns Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994); *In re Yorkshire, LLC,* 540 F.3d 328, 332 (5th Cir. 2008); *In re Seare*, 515 B.R. 599, 615 (B.A.P. 9th Cir. 2014); *In re Nguyen,* 447 B.R. 268, 280 (B.A.P. 9th Cir. 2011); *In re Rainbow Magazine, Inc.,* 77 F.3d at 284–85.

106.  The inherent powers of the court extend to the authority "to control admission to its bar, to discipline attorneys who appear before it…." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-48 (1991). *See also In re Snyder*, 472 U.S. 634, 643 (1885)("Courts have long recognized an inherent authority to suspend or disbar lawyers…This inherent power derives from the layer's role as an officer of the court which granted admission."); "The inherent power of a federal court to "control admission to its bar and discipline attorneys" is not displaced by statutes (such as Sections 526(a) and 528(a)) or procedural rules (such as Fed. R. Bankr. P. 9011) governing abusive lawyer conduct. *In re Mennona*, 2023 WL 149957 \*\* 20-21(Bankr. D. Colo. Jan. 10,

20

2023)(*discussing* Chambers).

107.  As part of its oversight responsibility, the bankruptcy court must sometimes take into consideration the rules governing the professional conduct of the lawyers practicing before it. *See Parker v. Jacobs*, 466 B.R. 542, 549 (M.D. Ala.), *aff'd sub nom. In re Parker*, 485 F. App'x 989 (11th Cir. 2012); *In re Dobbs*, 535 B.R. at 689 ("[W]hen considering attorney misconduct and Rule 9011 violations, a bankruptcy court may also take into consideration the Rules of Professional Conduct of the state in which the court sits."); *In re Santos*, 616 B.R. 332, 353 (Bankr. N.D. Tex. 2020) (same); *In re Seare*, 493 B.R. at 215-216 (retainer agreement executed without compliance with the communication and consultation rules found in Nevada's rules of professional conduct violated § 528(a)).

108.  By hiring out the preparation of petitions to a paralegal subcontractor through another entity Mr. Ronke has positioned and enabled Ms. Gorman to practice law without proper licensure.

109.  Bankruptcy Code § 110 defines a "bankruptcy petition preparer" as "a person, other than an attorney for the debtor . . . who prepares for compensation a document for filing" in a United States bankruptcy court. 11 U.S.C. § 110(a)(1).

110.  An individual petition preparer is required by § 110 to, inter alia, "sign the document and print on the document the preparer's name and address." 11 U.S.C. § 110(b)(1). Before preparing any document or accepting any fees from a debtor, a petition preparer must "provide to the debtor a written notice which shall be on an official form" which informs the debtor that the petition preparer "is not an attorney and may not practice law or give legal advice." That notice must be signed by the debtor and, under penalty of perjury, by the

bankruptcy petition preparer," and must be filed with the other documents. 11 U.S.C. § 110(b)(2)(A) & (B). No such disclosure has been made in this case.

111.  Due to Ms. Gorman's position as a subcontractor of CaseDriver and Mr. Ronke's lack of formal agreement with CaseDriver, it is unclear whether Ms. Gorman is drafting petitions as a paralegal or a document preparer.

112.  The law, however, is clear. Neither a document preparer nor paralegal may give legal advice. *In re Kassa*, 198 B.R. 790, 791 (Bankr. D. Ariz. 1996).

113.  The communications Ms. Gorman has had with the Debtors evidence her providing legal advice to the Debtors which raises questions related to the oversight Mr. Ronke is providing to ensure that Debtors are receiving proper legal advice from a licensed attorney.

WHEREFORE, the UST requests the Court enter judgment against Mr. Ronke (a) enjoining Mr. Ronke and his firm from associating with Ms. Gorman and CaseDriver; and (b) such other relief as deemed proper.

## IV.  PRAYER FOR RELIEF

114.  The UST hereby realleges and incorporates by this reference all preceding paragraphs.

115.  Mr. Ronke's conduct warrants relief under Sections §§ 329(b), 526, 528, and Fed. R. Bankr. P. 2017. In determining an appropriate remedy this Court should impose relief necessary to deter future misconduct and ensure compliance with the Bankruptcy Code and Rules. The Acting United States Trustee requests the Court enter judgment against Mr. Ronke according the following relief:

      a.   Impose upon a monetary sanction in for form of disgorgement of fees;

b.  Opine a determination of whether Mr. Ronke's relationship with CaseDriver is a legitimate fee sharing arrangement that is appropriate under the Bankruptcy Code and Rules;

c.  Require Mr. Ronke fully disclose each and every open case which CaseDriver has been involved;

d.  Enjoin Mr. Ronke and his firm from associating with Ms. Gorman or CaseDriver until a determination as to the appropriateness of the relationship has been made by this Court; and,

e.  Such other relief as the Court deems appropriate pursuant to Sections 329, 526, or its inherent powers pursuant to Section 105(a).


Dated:  April 29, 2024

MARY R. JENSEN
Acting United States Trustee
Region 12

By:/s/ Alexandria Quinn-Hanse
**Alexandria Quinn-Hanse**
ID # AT0013462
314 S. Main Avenue, Suite 303
Sioux Falls, SD 57104
Ph: (515) 284-4985
Allie.Quinn-Hanse@usdoj.gov